```
 1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF KENTUCKY
 2                    CENTRAL DIVISION AT LEXINGTON

 3

 4   UNITED STATES OF AMERICA,      )
                                    )
 5             Plaintiff,           )    5:09-CR-181-S
                                    )    Lexington, Kentucky
 6        vs.                       )    July 20, 2010
                                    )    4:30 p.m.
 7   BRYAN COFFMAN, MEGAN COFFMAN   )
     VADIM TSATSKIN, aka VICTOR     )
 8   TSATSKIN, and GARY MILBY,      )    CONFERENCE
                                    )
 9             Defendants.          )

10

11                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE KAREN K. CALDWELL,
12                  UNITED STATES DISTRICT JUDGE

13

     APPEARANCES:
14

15   FOR THE GOVERNMENT:        KENNETH TAYLOR
                                Assistant United States Attorney
16                              Eastern District of Kentucky
                                110 West Vine Street, Suite 400
17                              Lexington, KY  40507

18                              EVA CHRISTINE LEWIS, ESQ.
                                Kentucky Public Protection Cabinet
19                              Financial Institutions Department
                                1025 Capital Center Drive, Suite 200
20                              Frankfort, KY  40601

21   FOR THE DEFENDANT          STEVEN RUSH ROMINES, ESQ.
     BRYAN COFFMAN:             Romines, Weis & Young, PSC
22                              600 West Main Street, Suite 100
                                Louisville, KY  40202
23
     FOR THE DEFENDANT          PATRICK J. RENN, ESQ.
24   MEGAN COFFMAN:             Romines, Weis & Young, PSC
                                600 West Main Street, Suite 100
25                              Louisville, KY  40202
                                (859) 619-3624
```

**Conference (July 20, 2010)**

2

1    APPEARANCES:   (Continued)

2    FOR THE DEFENDANT          R. MICHAEL MURPHY, ESQ.
     GARY MILBY:                Law Office of R. Michael Murphy, PLLC
3                               709 Mill Pond Road
                                Lexington, KY  40514
4
     Court Reporter:           Rhonda S. Sansom, RPR, CRR
5                              U.S. District Courthouse
                               101 Barr Street, Room 413
6                              Lexington, KY  40507
                               (859)619-3624
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Proceedings recorded by mechanical stenography, transcript
      produced with computer.
25

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

3

 1     (At 4:30 p.m. on July 20, 2010, with counsel for the

 2  parties and the defendants present, the following proceedings

 3  were had.)

 4     THE HONORABLE KAREN K. CALDWELL:  Good afternoon.  Will

 5  the Clerk please call the matter to come before the Court.

 6     THE CLERK:  Yes, your Honor.  Lexington Criminal Action

 7  09-181, United States of America versus Bryan Coffman, et al,

 8  called for a conference.

 9     THE COURT:  Will the United States make its appearance.

10     MR. TAYLOR:  Good afternoon, your Honor.  Ken Taylor and

11  Christine Lewis for the United States, your Honor.

12     THE COURT:  Mr. Taylor, Ms. Lewis.

13    Counsel for Bryan Coffman.

14     MR. ROMINES:  Your Honor, Steven Romines for the

15  defendant, Bryan Coffman, who is present alongside me here

16  today.

17     THE COURT:  Mr. Romines, Mr. Coffman.

18    And counsel for Megan Coffman.

19     MR. RENN:  Good afternoon, Judge Caldwell.  Patrick Renn

20  here for Ms. Coffman, and she is seated right behind me to my

21  left.

22     THE COURT:  Mr. Renn, Ms. Coffman.

23    And counsel for Gary Milby.

24     MR. MURPHY:  Good afternoon, your Honor.  Michael Murphy

25  for Gary Milby.  He is seated to my left.

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

4

1          THE COURT:  Mr. Murphy, Mr. Milby.

2     The Court has called this conference for the purpose of

3 placing some information on the record for the parties'

4 consideration and also to discuss scheduling in this matter.

5     Let me first bring to the parties' attention that at some

6 point a few years ago, Mr. Coffman, and maybe you can help

7 me, I believe that you and I were involved in scheduling a

8 meeting on behalf of the Federalist Society with a group of

9 lawyers from Lexington.  I could be mistaken.

10          DEFENDANT BRYAN COFFMAN:  That is correct, your Honor.

11          THE COURT:  And I'm not sure.  It's been at least ten

12 years ago.

13          DEFENDANT BRYAN COFFMAN:  It was ten years ago, there

14 were a number of people on there.  It was before your

15 appointment, I believe.

16          THE COURT:  Yes, it was before I was a Judge.  And I

17 don't know that we've really seen each other since that time,

18 but I wanted to make it known to the prosecution and all counsel

19 and parties here so that if there is any real or apparent

20 conflict in this case that it can be thoroughly aired at this

21 point.

22     I don't believe we've seen each other since that time.

23          DEFENDANT BRYAN COFFMAN:  No, your Honor, I've never

24 practiced in this court.

25          THE COURT:  All right.  If the United States wants to

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

5

1    make further inquiry into that, I'd be happy to entertain any

2    questions at this point.

3              MR. TAYLOR:  I don't have any questions, your Honor.

4              THE COURT:  Very well.  Any of the other defendants?

5              MR. ROMINES:  No.  No, your Honor.

6              THE COURT:  Mr. Murphy?

7              MR. MURPHY:  No, your Honor.

8              THE COURT:  Very well.  All right.  Let's look at the

9    schedule in this matter.  I understand that Judge Hood had

10   scheduled a trial in October for this case -- excuse me,

11   September.  And regrettably, my schedule will not permit me to

12   hear this case in September or October, and so I will have to

13   postpone the trial.

14      I understand that this matter has been declared complex by

15   Judge Hood, and I don't know if my entry into the case will

16   require that we hear additional motions, but I really just

17   wanted to get all of your thoughts on scheduling and how we

18   would proceed from here.

19      Let me first hear from you, Mr. Taylor, Ms. Lewis,

20   regarding your perceived timetables and your take on where we

21   are in this case.

22             MR. TAYLOR:  Well, your Honor, one matter has to be

23   resolved, and I filed a motion, I think, regarding this issue.

24   Some time ago, as part of the regular pretrial order of the

25   Court, Judge Hood entered an order saying that the United States

U. S. v. Coffman, et al., 5:09-CR-181-S

Conference (July 20, 2010)

6

1    should notify the parties and the Court upon completion of

2    discovery.  Thereafter, the parties would have two weeks, I

3    believe it was, to file pretrial motions.

4            THE COURT:  All right.

5            MR. TAYLOR:  I filed a motion indicating that we really

6    can't ever say we have completed discovery, but we have given

7    over everything we have right now.  And I mentioned some things

8    we might receive in the future, but that in my opinion we should

9    not wait until 100 percent of discovery is completed to begin

10   the motion practice.

11           THE COURT:  All right.

12           MR. TAYLOR:  So I'm asking for some clarification, I

13   guess.  I would like to set a "by" date for all motions that can

14   be filed now and get those heard.

15         And then, if there are others that are prompted by --

16           THE COURT:  Additional?

17           MR. TAYLOR:  -- additional discovery or by discovery

18   they've already got and haven't been able to review yet, then

19   I'm not going to object to any time limits on a timeliness

20   basis.

21           THE COURT:  So basically, you have provided what you

22   have as of this date and are prepared to go forward based on the

23   information you have at this time.  Is that correct?

24           MR. TAYLOR:  That's correct.  If I don't get another

25   document, I'm prepared to go to trial.

U. S. v. Coffman, et al., 5:09-CR-181-S
**Conference (July 20, 2010)**

7

1          THE COURT:  Okay.

2          MR. TAYLOR:  But I hope there are other issues that we

3     can get some discovery on.  The point they made is that they

4     haven't reviewed what they have now.  I said, "Okay, still file

5     the motions.  If you think the indictment is defective or you

6     think there's a Constitutional issue, file it.  Let's get this

7     thing going."

8          THE COURT:  All right.

9          MR. TAYLOR:  Now, as far as when we can try it and how

10    long, we can be ready late this year without any problem.  And

11    this is one of those trials that's almost impossible to predict

12    length; but a minimum of three weeks, and it could be more.

13         THE COURT:  All right.  It seems to me that I ought to

14    set aside at least four weeks, just because there may be issues

15    that arise in a case of this complexity that it would take us at

16    least that.  Or we should, I guess, err on the side of caution.

17       Mr. Romines?

18         MR. ROMINES:  Sure.  Judge, in response to Mr. Taylor's

19    motion, I guess it is, the motions that we can file now, without

20    having completely reviewed the discovery, I don't have a problem

21    going ahead and filing those sooner rather than later.

22         THE COURT:  Okay.

23         MR. ROMINES:  In fact, I intended to file them sometime

24    actually before this date, but I wanted to kind of see where the

25    Court was on that.

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

8

 1        However, the substantive motions that we're going to need

 2   to address, and I believe there will be at least two or

 3   three, require a lot more review of the discovery.

 4        There are a lot -- there are a lot of motions that I can

 5   file now, and I have no problem filing those within the next

 6   couple of weeks; however, those are motions that are fairly

 7   standard in most criminal cases.

 8        The fairly complex ones that I think this case will deal

 9   with are going to take some more time, because it involves a

10   fairly thorough review of the discovery and a very thorough

11   review of the case law regarding that.

12        So I guess, in response to Mr. Taylor's motion, I don't

13   have a problem filing motions that --

14             THE COURT:  Aren't dependent on discovery; is that a

15   fair characterization?

16             MR. ROMINES:  Yes, that's a fair characterization.

17             THE COURT:  Okay.

18             MR. ROMINES:  I don't have a problem with filing those

19   fairly promptly, but I don't want to be held to any time frame

20   regarding motions that continue to arise through the review of

21   the discovery.

22             THE COURT:  All right.  But assuming that this is all

23   the discovery, let's assume for a moment that Mr. Taylor has

24   given you all the discovery in this case, at what point would

25   you be prepared to file motions regarding discovery?

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

9

 1          MR. ROMINES:  Well, obviously, your Honor, there are

 2     motions I think that arise during trial preparation that kind of

 3     wouldn't -- wouldn't come up until that time, until you're

 4     actually getting ready for trial.  But I would think within a

 5     couple of months we could file everything that -- most of the

 6     motions that we need to file.

 7          THE COURT:  And as I think Mr. Taylor has indicated, if

 8     there's more discovery or whatever he's not going to object to

 9     your opportunity to challenge anything that might be offered

10     later in the case.

11          All right.  Thank you very much.

12          Mr. Renn?

13          MR. RENN:  Your Honor, my client, Megan Coffman, is in a

14     completely different situation than the other two defendants and

15     perhaps the fourth defendant yet to appear before the Court.

16          That being said, the United States said they had the

17     discovery completed.  This case was indicted back in

18     December, set for trial in February.  I don't know that I

19     would have been prepared for trial in February, but if need

20     be we could have gone on that date.

21          Shortly thereafter, we got the discovery.  The United

22     States got to us the discovery that they have.  We have had

23     it, and we have had an opportunity to look at it.

24          Again, her case is completely different than the other

25     defendants.  We would like to have a speedy trial, we would

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

10

 1    like to keep that September date, and we will be prepared to

 2    go forward on that date.

 3         THE COURT:  All right.  Are you prepared to file motions

 4    on your client's behalf, or do you anticipate the need to file

 5    motions on your client's behalf?

 6         MR. RENN:  Your Honor, I do file motions, and in this

 7    case here I talked with Mr. Taylor before coming on the record.

 8    I do anticipate filing a motion to sever, and I think I can have

 9    that filed very shortly.

10         There was some charts that the United States had, and they

11    had these way back when we looked at the discovery, and I would

12    like to get copies of those in advance of trial so that we can

13    make sure that they are accurate charts, that we're not going to

14    have something on the day of trial being introduced either as an

15    exhibit or even to show the jury.

16         The indictment, as far as defects in it, when you look at

17    the money-laundering counts that my client's been charged

18    with it does look like what they've done is charge several

19    different acts in one or two counts.  They say that we are

20    concealing assets and that the money is profits -- or

21    proceeds, excuse me.

22         And for that reason, I think that we would ask either A,

23    have a motion to dismiss based on multiplicity or duplicity,

24    or at least have the United States go through with a bill of

25    particulars and say, "This is what we expect to prove at

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

1   trial with respect to this individual count."

2       I can have those motions filed.  If we can keep the

3   September date, I will get them filed within the next couple

4   weeks just to keep that date.

5           THE COURT:  All right.  Thank you.

6       Mr. Murphy, for Mr. Milby.

7           MR. MURPHY:  Yes, your Honor.  At the rate that I've

8   been able to get through the discovery, it's still going to be a

9   substantial time before I'm going to be able to finish.  I'm not

10  quite a third of the way through.  I do know that the last batch

11  of discovery that we were given, if I recall, contained 31,000

12  or 32,000 different pdf pages to look at.

13      And even though a lot of it looks like it's the same

14  forms over and over again, I feel like that I've got a

15  responsibility to look at all of them, everything, to make

16  sure there's nothing hidden in there.  And I don't mean

17  deliberately hidden, I mean something that may jump out and

18  smack me in the face and say that this is something I need.

19      I was going to file a motion to continue, even though I

20  already filed one motion to continue this trial.  I did that

21  at that time that I filed a motion to declare this case

22  complex.

23      But I'm a sole practitioner.  I have other clients, and I

24  don't have a cadre of paralegals, law clerks, and case

25  investigators.

1    I was going to ask the Court for a trial date in

2    February, March, or April of next year.  I thought that would

3    be realistic, because once the discovery process is done I

4    can see spending weeks of preparation with my client, just

5    all day long, every day, week after week.

6        One other matter about the motions.  I don't have a

7    problem if you say, you know, "File the motions that you can

8    file now within a month."

9        I would also like to know, if it's okay with the Court if

10   other attorneys and codefendants file motions that I think

11   that I would like to join in, if I could just do a joinder,

12   rather than rehash the same case law or language over and

13   over again.  I think that just creates a lot of unnecessary

14   paperwork.

15       THE COURT:  I think certainly any defendant that wants

16   to join in another defendant's motion, you're certainly welcome

17   to do that, to the extent that it can save resources on anyone's

18   part.

19       And certainly, if anybody can agree on motions and

20   orders, the Court always welcomes that.  And that aids all

21   parties, as well.  But you may join other defendants'

22   motions, as necessary.

23       When would you anticipate being through your discovery

24   and being able to file any discovery-related motions,

25   Mr. Murphy?

1    MR. MURPHY:  Maybe in conjunction with what Mr. Romines

2   has outlined.  I would think about -- this is July, within

3   maybe --

4         THE COURT:  90 days?

5         MR. MURPHY:  I was going to say maybe by early or

6   mid-October or even late October.  Three months.

7      I would also like to reserve the rights, because when you

8   are doing trial prep you always think of last-minute things

9   where you can file additional motions in limine, that sort of

10  thing.

11     Or if I don't finish all the discovery by then and in the

12  last few thousand pages I come across something that rings

13  the bell, I'm sure I can ask the Court to file a discovery

14  motion out of time.  It wouldn't be anything that would be

15  lengthy or probably controversial.

16        THE COURT:  All right.  So if I hear consensus among the

17  defendants -- of course, except for Megan Coffman -- both as to

18  Gary Milby and Bryan Coffman, do you think that you could get

19  nondiscovery-related motions filed within 14 to 21 days and are

20  asking about 90 days to file discovery-related motions?  Is that

21  a fair summation?

22        MR. ROMINES:  And Judge, I would state pretty much

23  dispositive motions we will need more time on, motions to

24  dismiss and things like that.  But, you know, the standard

25  motions that don't require a further review of the discovery and

Case: 5:09-cr-00181-KKC   Doc #: 157   Filed: 10/28/10   Page: 14 of 31 - Page ID#:
808
U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

14

1    hearings most likely can be filed more promptly.

2         THE COURT:  All right.

3      Mr. Taylor, your response?

4         MR. TAYLOR:  Well, I really don't have any objection to

5    those time frames.  I do think the case needs to be moved.  It's

6    been over -- it's going to be a year in December since the

7    indictment.

8      I would like to at this time request reciprocal

9    discovery.  I don't think reciprocal discovery should wait

10   until every little discovery issue is resolved before it

11   begins, as well, because it could prompt some issues.

12        THE COURT:  I agree.  The thing is, this is a documents

13   case, as I understand it.  There shouldn't be a lot of newly

14   discovered evidence.  I'm assuming this is historic records,

15   such as bank transaction records and things like that.

16        MR. TAYLOR:  One of the things that complicates this

17   case is the international flavor of it.  Right now, we have a

18   defendant in Canada negotiating with us.  We intend to go see

19   him within the week.

20        THE COURT:  This is Mr. Tsatskin?

21        MR. TAYLOR:  Tsatskin.  And take his proffer.

22        THE COURT:  He has not appeared in the record yet.

23        MR. TAYLOR:  He may also have records and turn them over

24   to us, giving us consent to get records from Canada that we

25   otherwise couldn't get.

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

15

 1      We also have a witness in the Bahamas, and we want to

 2   raise an issue with him kind of delicately.  There's

 3   something called the law of the case, and that means that one

 4   Judge's ruling is the law of the case, absent a reason to

 5   change it.

 6      But we previously asked the Court's permission to go

 7   depose -- or actually bring Mr. Chase here and have a video

 8   disposition.  That was authorized by Judge Hood.  Now we are

 9   at the mercy of Arthur Chase to come here and voluntarily be

10   a witness.

11      If he doesn't, we are going to be asking for a recess of

12   the Court for the deposition under an MLAT decision so we can

13   go down and take his deposition.  I don't think that will

14   happen, but that's the law of the case now.  I just wanted to

15   make the Court aware of that.

16      Mr. Chase also has some discovery that he will provide us

17   with during the course.  We are in touch with his attorney,

18   as well.  So I wanted to make the Court aware of those

19   international issues.

20         THE COURT:  All right.  I think, given the information

21   that you have just provided, that it would not be realistic for

22   us to expect to try this case until after the first of the year.

23   I think the earliest we could be ready would be December.  And I

24   don't know about you all, but with Christmas vacations we can

25   barely seat juries in December.  People have family obligations.

Case: 5:09-cr-00181-KKC   Doc #: 157   Filed: 10/28/10   Page: 16 of 31 - Page ID#:
U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)
16

1    And usually the first of the year we have got people

2    getting back to school, so I want to be sure that we don't

3    have any kinds of obstacles in terms of seating a jury.

4        It seems to me that we should look for something

5    mid-January to mid-February and that that would give us

6    adequate time to address the discovery concerns that the

7    defense have and also time and flexibility to deal with the

8    issues presented by the prosecution.

9        Let me do this.  I know we have got a lot of lawyers

10   here.  The primary purpose of my getting you together today

11   was to make you aware of this potential conflict before I

12   delved further into this case to determine whether or not I

13   would be permitted to proceed in the case.

14       I will continue the trial that's set for September.  That

15   trial date is hereby set aside.

16       I would ask that in 21 days from today's date that

17   motions be filed that are not dependent on discovery, such as

18   the motion to sever, and I will deal with that as promptly as

19   I can.  If the Court grants the severance of this defendant,

20   then of course we will set a prompt and speedy trial date for

21   that defendant.

22       MR. RENN:  Thank you.

23       THE COURT:  But any motions for bills of particulars,

24   motions to dismiss the indictment, and other things that can be

25   filed without the benefit of discovery should be filed within 21

U. S. v. Coffman, et al., 5:09-CR-181-S

Conference (July 20, 2010)

17

 1    days of today's date, with response and reply times according to

 2    the rules.

 3        I will set a date, and I will do this by separate written

 4    order after conferring with my scheduling clerk.  But a date

 5    at or about 90 days for other dispositive motions that are

 6    related to discovery to be filed.

 7        And we will probably have monthly status conferences in

 8    this case to make sure that matters are kept on track, that

 9    the parties are communicating, and that there's no undue

10    delay in the case.  I don't think in a case of this nature

11    that taking a year to get it to trial is unreasonable, but I

12    think taking more than that will place a burden on all

13    parties, the United States as well as the defendants in this

14    case.

15        So we'll do everything that we can to get this matter

16    resolved by the end of February, to the extent that's

17    possible.

18        I'm going to keep my calendar clear.  We will work in

19    about six weeks there that we can get the matter heard.  And

20    I'll try to be flexible.  I can move some things around that

21    we already have scheduled.  I'll have my scheduling clerk

22    confer with all of you regarding your calendars, and then

23    I'll consult with you in order to get a trial date scheduled.

24        You all take a look again from maybe around January 18th

25    through the end of February, the first of March, and let's

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

 1   try to find a time that you can set aside four weeks for the

 2   trial.

 3       Do you think that's adequate, Mr. Romines?  I didn't get

 4   your comment.

 5           MR. ROMINES:  I do, your Honor.  I think we can try the

 6   case within a month.

 7           THE COURT:  Okay.  Mr. Murphy?

 8           MR. MURPHY:  That's fine, your Honor.

 9           THE COURT:  I'd like to do it earlier, if we can, rather

10   than later.  But I will have my scheduling clerk get in touch

11   with all of you, and we can reconvene.

12       To all of the defendants, as you all know, you are entitled

13   to be here for each and every part of this proceeding.  But in

14   terms of getting the schedule arranged with this many lawyers,

15   may I have your permission to have chambers contact your

16   attorneys just to check on their calendar dates?  I will make

17   them obligated to report to you when my chambers has contacted

18   them.

19       Mr. Coffman?

20           DEFENDANT BRYAN COFFMAN:  That will be fine, your Honor.

21           THE COURT:  All right.  Ms. Coffman?

22           DEFENDANT MEGAN COFFMAN:  That will be fine.

23           THE COURT:  All right.  And Mr. Milby, is that all right

24   with you?

25           DEFENDANT GARY MILBY:  That certainly is.

1          THE COURT:  I'm just trying to avoid dragging everybody

2     in here when it's not anything substantive.

3        Mr. Murphy?

4          MR. MURPHY:  One other thing, your Honor.  I wanted to

5     make the Court aware of something.  Mr. Milby has been indicted

6     in Tennessee for virtually identical charges.  The trial is set

7     for November down there.  I can't imagine it lasting all the way

8     into February.  Obviously, if it did, we will have to set it off

9     days or weeks.

10          THE COURT:  We will cross that bridge when we get to it.

11     I will expect all the attorneys, having been forewarned, we're

12     going to make this happen sometime in February, so clear your

13     schedules to the extent that's possible.

14        Mr. Taylor, is there anything else from the United

15     States' standpoint that we can talk about today or other

16     issues that you can bring to my attention that we can be

17     thinking about in order to move this case forward?

18          MR. TAYLOR:  There is one issue, your Honor.  We have

19     some documents that were obtained in both digital and hard-copy

20     documents that were obtained in the search of Mr. Coffman's law

21     firm's office.  We have had those reviewed, about two-thirds of

22     those so far reviewed for attorney-client privilege taint, but

23     we are still in that process.

24        But out of an abundance of caution, we gave the whole

25     universe of those documents to Mr. Coffman's attorney.  So he

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

 1    has all of them.  He has more than what I have seen.

 2            MS. LEWIS:  In January.

 3            MR. TAYLOR:  We provided them in January.

 4            THE COURT:  So you have basically given him his

 5    documents back; is that correct?

 6            MR. TAYLOR:  That's correct.

 7            THE COURT:  Okay.

 8            MR. TAYLOR:  We've asked him to assert any privilege

 9    that he wants to assert with regard to those documents.  He's

10    informed us that he takes the position that all of them are

11    privileged.  I don't believe that argument can be made in good

12    faith, so I would like to ask that we be --

13            THE COURT:  Do you want to brief that?

14            MR. TAYLOR:  -- that we be notified of the particular

15    documents that he's claiming are covered by the attorney-client

16    privilege.

17            THE COURT:  All right.

18            MR. ROMINES:  If they are seized from his law office, I

19    think by definition they're privileged.  That's the position

20    we're taking.  You know, and that's why they're under the

21    obligation to -- you know, they don't randomly review some of

22    them for taint, they review them all.  And if they're taken from

23    his law office, they are subject to attorney-client privilege.

24    That's the position we are taking all day long.  Unless they can

25    show some other reason why they are not, then we are asserting

Case: 5:09-cr-00181-KKC   Doc #: 157   Filed: 10/28/10   Page: 21 of 31 - Page ID#:
U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)
21

 1    privilege as to all those documents taken from his office.

 2         THE COURT:  Well, when I had a law office, I had a lot

 3    of things in it that were my clients' business.  Are you taking

 4    the position that --

 5         MR. ROMINES:  Magazines and whatnot, no, Judge.  But all

 6    attorney files, all correspondence, e-mails, items on the

 7    computer.  All of those, yes.

 8         MR. TAYLOR:  That's not a correct statement on the law.

 9    Lawyers' communications with third parties outside of the

10    relationship are not privileged at all.  Correspondence with

11    other law firms are not privileged.  Correspondence with victims

12    of his crimes are not privileged.

13      The only thing that is privileged is the communications

14    of the client and attorney in a private setting without third

15    parties present that involve the seeking or giving of

16    attorney-client advice.

17         THE COURT:  Mr. Romines?

18         MR. ROMINES:  If they have a basis for why a document is

19    not privileged, fine.  But to this point, I'm asserting

20    privilege.  If they can show something is not privileged, if

21    they want to show that, fine.  But it would not be prudent of me

22    on my client's behalf to just waive it for either him or his

23    clients, unless they can show otherwise.

24         THE COURT:  Now, you can't waive it for his client.

25         MR. ROMINES:  Exactly.

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

1    THE COURT:  Who bears the burden here, Mr. Taylor?

2    MR. TAYLOR:  He has to assert a privilege.  If he

3 doesn't assert it, it's waived.

4    MR. ROMINES:  And I have -- and I have asserted

5 privilege to all the documents seized from his office.

6    THE COURT:  All right.  Then who bears the burden here?

7 I haven't researched it, I'm asking.  It's not a rhetorical

8 question, it's one of information.

9    Who bears the burden?  Does he bear the burden of

10 demonstrating privilege, or does the United States ask what it

11 wants?  You have seen everything, so you identify the documents

12 that you want to use and then have him assert the privilege as

13 to his documents?

14    MR. TAYLOR:  I don't know that it's a privilege

15 situation.  In a taint situation, we go through with the taint

16 team and typically we put each document in one of three

17 categories.

18    And a very common way is to call it red, yellow, and green.

19 And green means the reviewer says, "There's no way an argument

20 can be made that this is an attorney-client privileged document.

21 It's obvious on its face it's not privileged.  We can give this

22 over now to the prosecutor."

23    The yellow stack is, "I'm not sure.  Is this an attorney

24 or not?  Is this seeking legal advice, or not?  Or it can be

25 what looks like it would ordinarily be privileged, but it

1    looks like it may be crime fraud exception or some other

2    exception?"

3         And then the third category is, "Yeah, this is clearly

4    attorney-client privilege."  That's the way our taint team

5    has reviewed.

6         What we have simply asked Mr. Romines to do is kind of

7    put a second layer or tier of review on that process so in

8    case we miss something we don't further compound the problem.

9         And if he asserts privilege to something that's in our

10   green file, then we've got an issue.

11        THE COURT:  Or possibly yellow, that would at least be

12   an issue that has to be hashed out.

13        Mr. Romines?

14        MR. ROMINES:  Correct, Judge.

15        MR. TAYLOR:  We are just trying to join the issues.

16   What we intend to do, your Honor, is after I get the green file

17   I'm going to review it for relevance to this trial.  And I'm

18   going to assume I can use that, absent any objection from him.

19        THE COURT:  Mr. Romines?

20        MR. ROMINES:  Judge, I don't think that's -- until this

21   Court has ruled that they're not privileged, then he -- and I

22   assume Mr. Taylor hasn't reviewed any of those files from the

23   law office.  Correct?

24        MR. TAYLOR:  The green ones, I have.

25        MR. ROMINES:  And see, Judge, that's the very issue.

1    Until this Court rules that there's no privilege on those

2    documents, they are not entitled to review them.

3           MR. TAYLOR:  That's wrong.

4           MR. ROMINES:  It's not wrong.  That's why -- that's why

5    they can't go in and take them and review whatever they want to

6    and say, "Now, try to argue what we are not allowed to have

7    this."  They are not allowed to have them, they are not allowed

8    to review them because it taints the entire indictment.

9           THE COURT:  I understand.  I think what we're going to

10   have to do is brief the issue instead of each of you telling me

11   that you don't agree with the other person's interpretation of

12   the law.

13          MR. ROMINES:  That's fine, your Honor.

14          THE COURT:  So within 21 days, I want briefs from all

15   the parties.  I don't see a need for responses and replies.  I

16   want simultaneous memoranda with respect to your position on the

17   files.  We now know how it's postured, that at least some of the

18   red documents haven't been provided to you at all; is that

19   correct, Mr. Taylor?

20          MR. TAYLOR:  That's correct.

21          THE COURT:  Yellow, have they been provided to you?

22          MR. TAYLOR:  No.  I'm debating over whether to ask the

23   Court to submit them to a magistrate for review.

24          THE COURT:  An in-camera review?  All right.

25          MR. TAYLOR:  The green ones, we always look at.  They

U. S. v. Coffman, et al., 5:09-CR-181-S

Conference (July 20, 2010)

1    are the ones that there's no possible argument that could be

2    made for privilege.

3          THE COURT:  Well, Mr. Romines is going to take a

4    different position on that.

5          MR. ROMINES:  Right.

6          THE COURT:  But let's do this.  What I'd like to have

7    from each of you, now that you know how these documents have

8    been categorized by the taint team, is for each of you to state

9    your legal position with respect to the use and management of

10   those documents in their current status.

11      I would like for you to cite the relevant case law as to

12   privilege and who bears the burden.  I would also like for

13   each of you to offer your suggestions as to how we should

14   manage this issue going forward.

15      Mr. Taylor?

16          MR. TAYLOR:  There's another overlay issue that I want

17   to bring up.  I was almost tempted to say this taint process is

18   so cumbersome that I'm not even going to worry about what's out

19   there.  I have enough evidence without looking at any more.  I

20   was not even going to complete the taint process.

21      The problem is, I can't do a Brady review and I can't

22   turn the documents over to the defendants without first going

23   through the taint process.  And even when I'm done with the

24   taint process, there's going to be Brady material as to

25   Mr. Milby in the yellow and the red.

Case: 5:09-cr-00181-KKC   Doc #: 157   Filed: 10/28/10   Page: 26 of 31 - Page ID#:
U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)
26

1      But I can't look at it to tell you whether there is or

2  not.  And if it is privileged, I guess he can't even look at

3  it, either.

4           MR. ROMINES:  Right.

5           MR. TAYLOR:  But I want the Court to be aware that I

6  cannot certify that I have reviewed everything for Brady because

7  of this attorney-client issue.

8           THE COURT:  I understand.

9       Mr. Romines?

10           MR. TAYLOR:  But the other defendants may have a dog in

11  this fight and want the Court to review it.

12           MR. ROMINES:  Clearly, they are my client's documents,

13  so they don't have to provide Brady material on something that's

14  ours to begin with.

15           THE COURT:  I understand.

16           MR. ROMINES:  So obviously, what they can do is, they

17  can give it back to us, the documents that they have.

18           MR. TAYLOR:  Mr. Romines would not have a Brady issue.

19  They are his client's documents.

20           THE COURT:  But Mr. Murphy and Ms. Coffman would have

21  Brady issues.  Mr. Murphy?

22           MR. MURPHY:  Yes, because my client is one of the people

23  that Mr. Coffman was representing expediently over a period of

24  time.

25           THE COURT:  I understand.  I would ask that in your

1    memoranda that you file with the Court that you also offer

2    suggestions and your observations as to how the Court should

3    address potential Brady problems.  At least then I will have a

4    baseline of what the case law is with respect to these issues.

5    I will also have had the benefit of more time to look at this

6    and make some sense of it.

7        I think we are probably going to have at some point a

8    magistrate judge looking at some of these documents and

9    assisting us in reviewing the issues for Brady in determining

10   what is the proper procedure for handling that.

11       As I sit here right now I don't know the answer, and I

12   don't think any of you guys do, either, although you make a

13   pretty good statement for acting like you do.

14           MR. ROMINES:  That's the key, Judge.

15           THE COURT:  So we'll figure this one out.

16       All right.  Any other issues, Mr. Taylor, that you see

17   coming down the road that we might need to be anticipating?

18           MR. TAYLOR:  There's one lingering issue that Mr. Murphy

19   raised some time ago, and that's about some documents that were

20   taken in a search of the cabin and the home in Campbellsville.

21       We had a big row on that earlier, about the facts, and I

22   think it's still an undisputed factor.  And I'm curious as to

23   whether that was resolved or whether we still have issues with

24   regard to that search.

25           THE COURT:  Now, this could be called the new judge

 1  fight, where what you didn't get the first time you are going to

 2  try again, Mr. Murphy?

 3          MR. MURPHY:  It just never got resolved, your Honor.  We

 4  started what would have been a very lengthy hearing, and it kind

 5  of abruptly ended on the first document that I handed the Court.

 6      Yes, it's unresolved, with some side issues.  I'll put

 7  that -- I'll try to focus in and reframe that and present it

 8  to the Court in these motions that are going to come in in

 9  three weeks.

10          THE COURT:  In three weeks?  Is that a reasonable way to

11  handle that, Mr. Taylor, so that I can be familiarized with it?

12          MR. TAYLOR:  Sure.

13          THE COURT:  All right.  Anything else from the United

14  States?

15          MR. TAYLOR:  No, your Honor.

16          THE COURT:  Mr. Romines, what issues do you see that the

17  Court needs to be mindful of as we move forward?

18          MR. ROMINES:  Judge, none that we want to address in

19  writing, none that come to mind right now.  Although it's a

20  complicated case, it's a standard fraud case.

21      The only issue that I see being problematic, Judge, is

22  Mr. Taylor indicated there is a count of this indictment in

23  which all the alleged victims are Canadian residents and the

24  company was actually in Canada, so it's a question of violating

25  Canadian securities laws.  We're going to have to address that

U. S. v. Coffman, et al., 5:09-CR-181-S

**Conference (July 20, 2010)**

29

1   issue.

2       But also there are, we believe, exculpatory witnesses in

3   Canada, based on our review of some of the discovery we've seen.

4   So we're going to have some issues regarding producing those

5   people for trial.

6           THE COURT:  All right.

7           MR. ROMINES:  One other factor, Judge, and completely

8   unrelated.  Will your Honor ever schedule matters in court or

9   will your scheduling clerk do it?

10          THE COURT:  Sometimes I'll schedule them here, but most

11  of the time I'll try to have my scheduling clerk do it so that

12  all of you have your calendars and access to your secretaries

13  and paralegals to help you keep up with it.

14      But for purposes of a case like this, I will waive the

15  cell phone rule for counsel in this case.  But now, this

16  comes with a price.  I will tell the CSOs that you may bring

17  your cell phones and electronic calendars into the courtroom.

18  If one rings here, it is mine, SIM card and all.  No

19  exceptions.

20      So as long as we have that understanding, counsel for the

21  United States and the defense may bring their electronic

22  calculators and cell phones in.

23          MR. ROMINES:  That was my question.

24          THE COURT:  So we will do that.  But most of the time,

25  if you are like me it's just easier when I am at my desk with

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

30

 1   all my other materials sometimes to come up with potential

 2   dates.  So we will work on the schedule as much as we can.

 3       Anything else, Mr. Romines?

 4           MR. ROMINES:  No, your Honor.

 5           THE COURT:  Mr. Renn?

 6           MR. RENN:  If my phone gets taken by the Court, will I

 7   have an opportunity to clone it?

 8           THE COURT:  No.  The sanction is death.

 9           MR. RENN:  That's fine, your Honor.

10           THE COURT:  All right.

11       Mr. Murphy?

12           MR. MURPHY:  I think we have touched on every issue that

13   I have that we needed to talk about here today.

14           THE COURT:  All right.  Thank you all for being here.

15           MR. ROMINES:  Judge, I apologize.  There is one other

16   matter.  Judge, there is an outstanding motion regarding the

17   release of lis pendens that has not been ruled upon.  It's been

18   briefed and replied, and it's ripe for a ruling.

19           THE COURT:  Thank you for bringing that to my attention.

20   We will get on that as soon as we can.

21       Again, thank you all very much.  This has been very

22   helpful.  I will look forward to receiving your papers and

23   motions.

24       We will be adjourned.

25       (Proceedings concluded at 5:07 p.m.)

U. S. v. Coffman, et al., 5:09-CR-181-S
Conference (July 20, 2010)

31

1       I certify that the foregoing is a correct transcript from
2   the record of proceedings in the above-entitled matter.

3       *Rhonda S Sansom*                    *10/28/2010*
    _____        _____
4       Rhonda S. Sansom, RPR, CRR                  Date

5                ORIGINAL TRANSCRIPT FILED ELECTRONICALLY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25