Eastern District of Kentucky
FILED
APR 16 2012
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 09-CR-181-KKC

UNITED STATES OF AMERICA            PLAINTIFF

v.

**MEMORANDUM OPINION AND PRELIMINARY ORDER OF FORFEITURE**

BRYAN COFFMAN            DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Government's Motion for a Preliminary Order of Forfeiture pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure. [DE 393, DE 459]. Bryan Coffman has moved for a general order of forfeiture. [DE 437]. The matter has been fully briefed and the Court heard oral arguments on September 22, 2011. For reasons stated below, the Court will DENY the motion for forfeiture of the 4816 Chaffey Lane residence and will GRANT the motion to forfeit all other property listed in the indictment.

## BACKGROUND

A jury convicted Bryan Coffman of mail fraud, wire fraud, securities fraud, and money laundering. The indictment charged Coffman with running an investment scheme in which he defrauded investors by misrepresenting the value or existence of various oil and gas investments and transferred millions of dollars of investor funds into personal accounts. The indictment contained forfeiture allegations and after the jury trial, Coffman waived his right to a jury trial on the forfeiture issues. [DE 349]. As part of the sentencing process, the Government seeks to divest

1

Coffman of the proceeds of his scheme as well as other assets that were comingled with the ill-gotten gains and used to launder the tainted money.

At issue are thirteen (13) financial accounts, two (2) pieces of real property and a yacht. The parties agreed that three financial accounts contained only investor funds and were subject to preliminary forfeiture. At oral argument, the Court entered a preliminary order of forfeiture on these three accounts,[1] and denied the Government's motion for forfeiture of the 4816 Chaffey Lane residence.

The Government seeks preliminary forfeiture of investor funds in various financial accounts as well as assets purchased with investor funds. Coffman does not object to the forfeiture of investor funds. However, he objects to the forfeiture of any funds or property not directly traceable to the investor funds.

The Court has considered the evidence presented at trial, along with testimony from United States Postal Inspection Service financial analyst Ryan Lee. [DE 393-2]. The parties submitted legal memoranda in support of their positions and the Court heard oral arguments on September 22, 2011. Having considered the legal arguments and reviewed the record, the Court issues this Order.

## DISCUSSION

### I. Legal Standard

Under the Federal Rule on criminal forfeiture, "the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). The United States must establish this nexus by a preponderance of the

---

[1] The three accounts forfeited at oral argument are American Founders Bank Account 3826 in the name of Megan Coffman in the amount of $5,593.16, Wachovia Account 2871 in the name of American Oil and Gas in the amount of $275,253.00, and Wachovia Account 4179 in the name of Bryan Coffman in the amount of $115,951.76.

evidence. *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007). The Government seeks forfeiture under two different, but similar, federal statutes. [DE 393-1 at 3].

A. Proceeds Forfeiture

First, the Government seeks forfeiture under 18 U.S.C. § 981(a)(1)(C) which authorizes the forfeiture of property "which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity.'" 18 U.S.C. § 981 (a)(1)(C). Mail and wire fraud are specified unlawful activities. *See* 18 U.S.C. § 1956(c)(7)(A) (stating that a "specified unlawful activity" includes "any act or activity constituting an offense listed in 18 U.S.C § 1961(1)"); 18 U.S.C. § 1961(1) (listing mail and wire fraud). In short, § 981(a)(1)(C) subjects to forfeiture the proceeds traceable to the fraud and is not limited to the net gain or profit realized from the offense. § 981(a)(2)(A). Proceeds of a fraud is defined as "property that a person would not have but for the criminal offense." *United States v. Nicolo*, 597 F. Supp. 2d 342, 346 (W.D.N.Y. 2009) (quoting *United States v. Grant*, No. 05-1192, 2008 WL 4376365, at *2 n. 1 (S.D.N.Y. Sept. 25, 2008)).

B. Money Laundering Forfeiture

The Government also seeks forfeiture under 18 U.S.C. § 982(a)(1). If a defendant is convicted of money laundering or conspiracy to commit money laundering, the court "shall order that the person forfeit to the United States any property, real or personal, *involved in* such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1) (emphasis added). The term "involved in" includes "the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense." *United States v. McGauley*, 279 F. 3d 62, 76 n. 14 (1st Cir. 2002) (citing *United States*

3

v. *All Monies ($477,048.52) in Account No. 90-3617-3*, 754 F. Supp. 1467, 1473 (D. Haw. 1991)).

Money laundering forfeiture pursuant to § 982(a)(1) applies to a larger class of property than proceeds forfeiture under § 981(a)(1)(C) because it applies to more than just the laundered property or proceeds from the laundered property. Money laundering forfeiture is required for all property "involved in" the crime, which can include clean or legitimate money that is comingled with tainted money derived from illicit sources.

There are two ways clean money can be involved in a money laundering offense and subject to forfeiture. First, if tainted money is commingled with clean money, and money is laundered out of the comingled account—all of the money laundered out of the account constitutes the corpus of the money laundering, not just the tainted money. *See United States v. Funds on Deposit at Bank One, Ind. Account 1563632726*, No. 2:02-480, 2010 WL 909091, at *8 (N.D. Ind. Mar. 9, 2010) (citing *United States v. Huber*, 404 F.3d 1047, 1058 (7th Cir. 2005)); *United States v. $70,150*, No. 02-874, 2009 WL 3614871, at *11 (S.D. Ohio Oct. 28, 2009) (holding that if legitimate money was involved in the offense, both legitimate and illegitimate money are subject to forfeiture).

Second, property derived from legitimate sources can be used to facilitate money laundering. *See, e.g., United States v. McGauley*, 279 F.3d 62, 76–77 (1st Cir. 2002). Several circuits, including the First, Fifth, Seventh, Tenth, and Eleventh as well as one district court in the Sixth Circuit have adopted the "facilitation" theory of money laundering. *See United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003); *United States v. McGauley*, 279 F.3d 62, 76–77 (1st Cir. 2002); *United States v. Baker*, 227 F.3d 955, 970 n. 4 (7th Cir. 2000); *United States v.*

4

*Bornfield*, 145 F.3d 1123, 1134-35 (10th Cir. 1998); *United States v. Tencer,* 107 F.3d 1120, 1135 (5th Cir. 1997); *United States v. Warshak*, 562 F. Supp. 2d 986, 1005 (S.D. Ohio 2008).

Property is used to facilitate money laundering "when the property makes the prohibited conduct less difficult or more or less free from obstruction or hindrance." *Bornfield*, 145 F.3d at 1135 (internal quotation marks omitted) (quoting *Tencer*, 107 F.3d at 1134). This facilitating property can be property derived from either legitimate or illicit activities. With respect to legitimate money commingled with illegitimate funds:

> the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture. However, forfeiture of legitimate and illegitimate funds commingled in an account is proper as long as the government demonstrates that the defendant pooled the funds to facilitate, i.e., disguise the nature and source of, his scheme.

*Id.* at 1135 (citations omitted) (citing *Tencer*, 107 F.3d at 1134-35).

Finally, it is important to note the limited nature of this proceeding. This Order merely determines the nexus between the crime of conviction and the property sought to be forfeited. This Preliminary Order of Forfeiture terminates only Bryan Coffman's interest in the property. This Order has no impact on third-party ownership. If there are third-party claims to the property, those parties must file claims and the Court will evaluate those claims at future ancillary proceedings consistent with Rule 32.2(c).

## II. Analysis

The United States seeks preliminary forfeiture of thirteen (13) financial accounts, two (2) pieces of real property and a yacht. [DE 393-1]. Coffman objects to the forfeiture of six (6) accounts in their entirety, portions of four (4) accounts, both pieces of real property and the yacht. [DE 401]. Coffman does not object to the preliminary forfeiture of three (3) financial

5

accounts. The Government and Coffman generally agree as to the property that is traceable to investor funds or proceeds of a specified unlawful activity. The parties dispute whether property not traceable to investor funds, but comingled with investor funds, is subject to forfeiture.

At the hearing, the Court ordered preliminary forfeiture on the three uncontested accounts—American Founders Bank Account 3826, Wachovia Account 2871, and Wachovia Account 4179. The remaining financial accounts, real property and the yacht are discussed below.

### A. Financial Accounts

The Government argues that the funds in each listed account were either traced to investor funds and therefore proceeds of a specified unlawful activity or involved in money laundering. Coffman does not contest the portions of each account that were traced to investor funds. However, Coffman objects to the Government's claim that the non-investor funds in each account were involved in or facilitated money laundering. For the reasons discussed below, the Court finds that the contested funds in each financial account were involved in, or facilitated, money laundering and are subject to forfeiture.

1. Raymond James Financial Services Account 2262 (in the name of Megan Coffman)

The Government and Coffman agree that $1,203,564.21 in Raymond James Account 2262 is traceable to investor funds and subject to forfeiture. Coffman objects to the forfeiture of the remaining $272,235.52 because the Government cannot identify the source of these funds and "the money was by no means hidden." [DE 398 at 6]. The Government argues that the entire account is subject to forfeiture because Coffman was convicted on Count 21 in the indictment for laundering all of the funds into 2262, including the contested funds. [DE 393-1 at 9]

All money in Raymond James Account 2262 is subject to forfeiture because it formed the corpus of Coffman's conviction on Count 21 of the indictment. In November 2007, Bryan Coffman deposited investor funds in the amount of $1,203,564.21 into Raymond James Account 9062 which he held jointly with Megan Coffman. [DE 393-8]. At the time Coffman made the deposit, the account already contained $700,000 in non-investor funds. Three months later, on February 22, 2008, Bryan Coffman transferred the entire balance of Raymond James Account 9062 into the account at issue, Raymond James 2262. Regardless of the source of the non-investor money held in Raymond James 2262, it has been co-mingled with tainted funds for the purpose of obfuscating the origin or existence of the tainted money. Because the allegedly clean money constitutes part of the corpus of Coffman's money laundering conviction on Count 21, it is subject to forfeiture. *See United States v. Funds on Deposit at Bank One, Ind. Account 1563632726*, No. 02-480, 2010 WL 909091, at *8 (N.D. Ind. Mar. 9, 2010) (citing *United States v. Huber*, 404 F.3d 1047, 1058 (7th Cir. 2005)). The entire contents of Raymond James Account 2262 are subject to forfeiture because they were the corpus of Count 21 and involved in money laundering.

2. American Founders Bank Account 9802 (in the name of Megan Coffman DBA DACORTA, LLC)

The Government seeks forfeiture of $40,046.51 held in American Founders Bank Account 9802. The parties agree that $10,000 of the total sum is traceable to investor funds and subject to forfeiture. Coffman maintains that the remaining $30,046.51 is not investor money and is not, therefore, subject to forfeiture.

Coffman's money laundering convictions on Counts 23, 24, 29, 30 and 31 stem from two series of transactions involving American Founders 9802. The first series involved funds used to purchase a South Carolina condominium and the second involved funds used to purchase a yacht. [DE 393-1 at 9, 393-6].

### a. The South Carolina Condominium

On February 21, 2008, $140,000 of investor funds was deposited into American Founders 9802, which already contained non-investor funds. Four days later, two transfers, one for $151,000 and another for $4,000 were made from 9802 for the purchase of the condominium. [DE 393-1 at 10, DE 393-7]. Coffman was convicted on Count 29 for transferring funds into 9802 and on Counts 30 and 31 for transferring co-mingled funds out of the account to buy the condo.

### b. The Yacht, For Your Eyes Only

On August 1, 2008, Megan Coffman deposited $460,000 of investor funds from Wachovia Account 2871 into 9802. Five days later, she transferred $450,000 from the account to an escrow agent for the purchase of the yacht. [DE 393-1 at 9, 393-6]. These transactions provided the basis for Coffman's convictions on Counts 23 and 24 of the indictment.

The focus of this Court's forfeiture inquiry is whether the funds remaining in 9802 were either involved in or facilitated Coffman's money laundering. Here, the presence of non-investor funds in 9802 helped to "conceal the nature and source of the . . . fraud proceeds." *McGauley*, 279 F.3d at 76. Coffman argues that money traceable only to investor funds should be subject to forfeiture. In so doing, he does not address the facilitation theory and ignores the fact that "money laundering largely depends upon the use of legitimate monies to advance or facilitate the

8

scheme. It is precisely the commingling of tainted funds with legitimate money that facilitates the laundering and enables it to continue." *Tencer*, 107 F.3d at 1135.

Coffman could have purchased the yacht and condo with funds directly linked to investor accounts. Instead, Coffman laundered investor funds from the American Oil and Gas Resources Wachovia Account 2871 into his American Founders Account 9802, and then used those funds to purchase the yacht. Coffman engaged in a similar series of transactions to purchase the condo in South Carolina. If Coffman purchased either the yacht or condo directly from investor accounts, it might have been easier to discover the source of the illicit funds and easier to detect the overall scheme. By comingling investor funds with non-investor funds to purchase the yacht and condo, Coffman involved the non-investor funds in money laundering, and rendered them subject to forfeiture. Thus, the $40,046.51 held in American Founders Bank Account 9802, including the contested $30,046.51, is subject to a preliminary order of forfeiture.

### 3. PNC Bank Account 6953 (in the name of DACORTA, LLC)

The Government asserts that $465,573.87 in PNC Bank Account 6953 is subject to forfeiture because the funds originated in American Founders Account 9802 and that account was "integral in the money laundering and fraud schemes." [DE 393-1 at 12]. Coffman argues that the transfer from Account 9802 to 6953 "predated any transfers of alleged investor funds to [A]ccount 9802" and that no investor funds made their way into Account 6953. [DE 398 at 10].

Coffman's assertion that the transfer from 9802 to 6953 predated any transfers of investor funds into 9802 is contradicted by the record. On February 21, 2008, a check for $160,000 drawn on Bryan Coffman's Attorney at Law Central Bank Account 6604 was deposited into American Founders Account 3826. The same day, a check for $140,000 drawn on American Founders

9

3826 was deposited into American Founders 9802. This transaction from 3826 to 9802 led to one of Coffman's money laundering convictions, Count 29. The account at issue, PNC Bank Account 6953, was opened on May 14, 2008 with a $700,000 transfer of funds from Account 9802, almost three months after investor funds were laundered through 9802 to purchase the South Carolina condominium. [DE 393-3]. Coffman's claim that the transfer of funds from 9802 to PNC Bank Account 6953 occurred before any investor funds were deposited into 9802 is simply false.

Even if no investor funds made their way into PNC Bank Account 6953, the funds in that account are subject to forfeiture for the same reasons that the funds in American Founders Account 9802 are subject to forfeiture. The legitimate funds in 9802 facilitated five counts of money laundering and therefore, were involved in money laundering. These facilitating funds in 9802 were then transferred into PNC Bank Account 6953. The disputed funds in PNC Bank Account 6953 are the same funds that facilitated some of the money laundering convictions in 9802. The bank account is merely the container that holds the funds. If the funds inside a bank account were involved in money laundering, it does not matter where those funds are transferred. Transferring the money at issue out of 9802 into 6953 does not change the fact that these funds facilitated money laundering and are subject to forfeiture.

### 4. Traditional Bank Money Market Account 3555 and Traditional Bank CDARS Accounts 7314, 7349, 7373, 7381, 7403, and 7438

The Government seeks forfeiture of $774,157.73, the total amount held in Coffman's Traditional Bank Account 3555 and six CDARS accounts. Coffman does not object to forfeiture

of $200,000 that is directly traceable to investor funds. However, he objects to forfeiture of non-investor funds totaling $574,157.73.

So far, the discussion of Coffman's money laundering convictions has focused on the specific money laundering transactions for which Coffman was convicted—Counts 21, 23, 24, 26, 27, 28, 29, 30, 31 and 32 of the indictment. The Court has not discussed Count 20, the conspiracy to commit money laundering conviction. This count of conviction is not based on or limited to specific transactions, but encompasses the whole of Coffman's scheme and his attempts and plans to conceal and disguise the nature, location, source, ownership and control of the proceeds of the fraud. The transactions at issue and the non-investor funds that flowed through 3555 into the six CDARS accounts are part of and involved in the money laundering conspiracy conviction in Count 20.

In the transactions at issue, Coffman took investor money, proceeds of a specified unlawful activity, and comingled that money with non-investor or clean money in Traditional Bank 3555, a money market account in his wife's name. Then, that money was divided up and deposited into six different accounts, again in his wife's name.

Here, Coffman's various accounts and transfers disguised the nature, location, source, ownership and control of the proceeds of his fraud. Even now, neither the Government nor the Court can identify the precise location of the $200,000 in investor funds deposited into Account 3555 on July 17, 2009. That money has been comingled with non-investor funds from various sources and then, two short months later, deposited into six different accounts. It is precisely these transactions that conceal and disguise the nature and source of the proceeds of the fraud and form the basis for Coffman's conviction for conspiracy to commit money laundering.

11

Therefore, the Court finds by a preponderance of the evidence that all of the funds in Account 3555 and the six CDARS accounts were involved in or facilitated money laundering and are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1).

If the Court limited forfeiture strictly to the proceeds of the specified unlawful activities, as Coffman repeatedly requests, it "would effectively undermine the purpose of the forfeiture statute." *Tencer*, 107 F.3d at 1135. Coffman was convicted on numerous counts of money laundering and conspiracy to commit money laundering and "[c]riminal activity such as money laundering largely depends upon the use of legitimate monies to advance or facilitate the scheme." *Id.* In this case, like many others, "[i]t [was] precisely the commingling of tainted funds with legitimate money that facilitate[d] the laundering and enable[d] it to continue." *Id.* (citing *United States v. Contents of Account Numbers 208-06070 and 208-06068-1-2*, 847 F. Supp. 329, 355 (S.D.N.Y. 1994)).

### B. Real Property and the Yacht

In addition to the financial accounts, the Government seeks a preliminary order of forfeiture on two pieces of real property and a yacht. At the hearing, the Court denied the Government's motion with respect to the 4816 Chaffey Lane residence. This Order will further explain why no nexus exists between the house and any criminal activity. With respect to the condominium and the yacht, the Government has met its burden and established a nexus exists between the South Carolina condominium on Egret Crest Lane and Baniel LLC's yacht, *For Your Eyes Only*. Both the condo and the yacht were directly involved in money laundering.

### 1. 4816 Chaffey Lane Residence

The Government argues the house at 4816 Chaffey Lane is subject to forfeiture because it "was involved in and facilitated the commission of the crimes for which Bryan Coffman stands convicted." [DE 393-1 at 15]. The Government alleges that the property was "the address of record for corporate entities utilized in laundering investor money." [*Id.*]. DACORTA, LLC, a corporate entity that laundered money through the American Founders Bank Account 9802 discussed *supra* used 4816 Chaffey Lane as its address.

In order for property to be forfeited, "there must be more than an incidental or fortuitous connection between the property and the illegal activity." *United States v. Parcel of Property*, 337 F.3d 225, 233 (2d Cir. 2003). The general rule is that "some direct *financial link* between a defendant's money laundering and his real property must be shown before a court will order forfeiture of the property." *United States v. Nicolo*, 597 F. Supp. 2d 342, 356 (W.D.N.Y 2009) (emphasis added). The Government's evidence falls short of the type of nexus that typically exists in cases in which courts have found real property involved in money laundering. *See, e.g., United States v. Schlesinger*, 261 F. App'x 355, (2d Cir. 2008) (affirming forfeiture of real property because defendant "deposited the proceeds of his insurance and creditor fraud into the business operating accounts of the companies he ran at the premises, and the proceeds were then used to pay the companies' monthly lease and tax expenses"). Here, the evidence does not show that the house at 4816 Chaffey Lane "served as a conduit for the proceeds of the illegal transactions." *United States v. All Assets of G.P.S. Auto. Corp.*, 66 F.3d 483, 486 (2d Cir. 1995).

Using the house as an address for a corporate entity involved in money laundering is "too incidental and insubstantial to support forfeiture." *Nicolo*, 597 F. Supp. 2d at 356. For example,

13

in *Nicolo*, the court held that a defendant who used his house to generate invoices, used his address on those invoices, faxed the invoices from his house, and sent checks from his house was insufficient to sustain forfeiture of the house. *Id.* Similarly, in *Iacaboni*, the court held that a house used as a base of operations for a gambling scheme did not have a nexus to the money laundering operations. *United States v. Iacaboni*, 221 F. Supp. 2d 104, 110–11 (D. Mass. 2002), *aff'd in part, rev'd on other grounds in part*, 363 F.3d 1 (1st Cir. 2004).

The connection between the property on Chaffey Lane and Coffman's money laundering scheme is even more incidental than the connections in *Nicolo* and *Iacaboni*. The house merely served as an address for a corporate filing. There would have been no impact on the money laundering operations or the scheme in general if DACORTA, LLC's address was a random P.O. Box number and not 4816 Chaffey Lane. For the foregoing reasons, the Government's motion for a preliminary order of forfeiture on 4816 Chaffey Lane is denied.

2. South Carolina Condominium on Egret Crest Lane

The South Carolina condominium was purchased with investor funds, and is therefore proceeds of a specified unlawful activity. [DE 393-1 at 14]. In addition, Coffman was convicted of money laundering Counts 27-32 of the indictment for laundering proceeds of the fraud to purchase the condo. Coffman argues that the Government cannot forfeit the accounts from which the money was laundered to purchase the condo and the condo itself. [DE 398 at 13].

Coffman's argument has no merit. The money in the accounts used to launder money to purchase the condo and the condo itself are both subject to forfeiture pursuant to § 982(a)(1) because both were involved in money laundering. In addition, the condo itself is the proceeds of a specified unlawful activity and is also subject to forfeiture pursuant to § 981(a)(1)(C).

14

Coffman's argument ignores the fact that forfeiture pursuant to § 982(a)(1) is not limited to the proceeds of the specified unlawful activities, but captures all property that is involved in money laundering.

### 3. Baniel LLC's Yacht

The yacht is subject to forfeiture for the same reasons as the condominium. The yacht was purchased with investor funds, and those funds were laundered through accounts that are subject to forfeiture. [DE 393-1 at 15]. Bryan Coffman was convicted on Counts 23, 24, and 26 of the indictment for the money laundering associated with the yacht. The only difference between the yacht and the condo is that the entire purchase price of the yacht was not paid for with laundered investor funds. The laundered investor funds constituted half of the $900,000 down payment. [DE 393-1 at 15, DE 398 at 13]. Coffman argues that only "the portion of the yacht that was purchased with proceeds" should be subject to the preliminary order of forfeiture. [DE 398 at 13].

Coffman's argument presumes the yacht is subject to forfeiture because it is proceeds of a specified unlawful activity. As discussed throughout this Order, that is incorrect. The yacht is subject to forfeiture, in part, because it was purchased with proceeds of a specified unlawful activity. But, the yacht is also subject to forfeiture because it was involved in money laundering. The yacht was the subject of three specific counts of money laundering, and Coffman makes no argument in opposition to the obvious conclusion that the yacht was purchased with funds, some of which were involved in money laundering. The presence of the legitimate funds disguised the nature and source of the tainted funds and disguised the transaction as legitimate. The Government has proved the nexus between the yacht and the money laundering convictoins by a

15

preponderance of the evidence and the Court grants the Government's motion for a preliminary order of forfeiture.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's Motion For a Preliminary Order of Forfeiture for all financial accounts, the condominium on Egret Crest Lane, and Baniel LLC's yacht and the Court **DENIES** the Government's Motion for Preliminary Order of Forfeiture for the Coffman Residence located on 4816 Chaffey Lane.

**It is ORDERED** that the following property is hereby condemned and forfeited to the United States of America pursuant to 18 U.S.C. §§ 982(a)(1) and 981(a)(1)(C), to wit:

**FINANCIAL INSTITUTION ACCOUNTS:**

(1) Raymond James Financial Services Account # XXXX2262 in the name of Megan Coffman in the approximate amount of $1,475,799.73 and all interest accruing thereon;

(2) American Founders Bank Account # XXX9802 in the name of Megan Coffman DBA DACORTA, LLC in the approximate amount of $40,046.51;

(3) American Founders Bank Account # XXX3826 in the name of Megan Coffman in the approximate amount of $5,593.16;

(4) PNC Bank Account # XXXXXX6953 in the name of DACORTA, LLC in the approximate amount of $465,573.87;

(5) Wachovia Account # XXXXXXXXX2871 in the name of American Oil and Gas in the approximate amount of $275,253.00;

(6) Wachovia Account # XXXXXXXXX4179 in the name of Bryan Coffman in

the amount of $115,951.76;

(7) Traditional Bank Money Market Account # XX3555 in the amount of $174,157.73;

(8) Traditional Bank CDARS Account #XXXXXX7314 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(9) Traditional Bank CDARS Account #XXXXXX7349 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(10) Traditional Bank CDARS Account #XXXXXX7373 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(11) Traditional Bank CDARS Account #XXXXXX7381 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(12) Traditional Bank CDARS Account #XXXXXX7403 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(13) Traditional Bank CDARS Account #XXXXXX7438 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity.

**REAL PROPERTY:**

(1) Real property and residence located at 2032 Egret Crest Lane, Charleston, Charleston County, South Carolina, in the name of Corrie Anderson.

**CONVEYANCES:**

One 2003 Azimut Solar Yacht, Located in Charleston, South Carolina (Hull I.D. No. XAX74077G203)

It is further **ORDERED** that the United States Marshal shall seize the described forfeited property and dispose of the said property in accordance with the law. The United States Marshal shall provide notice as required by law. The United States is authorized to conduct appropriate discovery and to conduct any necessary ancillary proceedings as provided by 21 U.S.C., § 853(n) as to the rights of third parties who may have an interest in the property forfeited herein.

It is further ORDERED that the Clerk deliver copies of this Order to all counsel of record and the United States Marshal for the Eastern District of Kentucky.

**SO ORDERED**

Dated this 16th Day of April, 2012.



Signed By:
*Karen K. Caldwell*
United States District Judge