UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 09-CR-181-KKC

UNITED STATES OF AMERICA                                                      PLAINTIFF

v.                        **MEMORANDUM OPINION AND
                          PRELIMINARY ORDER OF FORFEITURE**

BRYAN COFFMAN                                                                 DEFENDANT

\* \* \*   \* \* \*   \* \* \*   \* \* \*

This matter is before the Court on the Government's Motion to Amend the Preliminary Order of Forfeiture and Forfeit Substitute Assets. [DE 509]. For the following reasons, the Government's motion is **GRANTED.**

### I. Motion to Forfeit Substitute Assets

The Government seeks to amend the preliminary order of forfeiture to forfeit eight parcels of real property and two automobiles. Defendant's wife, Megan Coffman, holds title to five of the parcels of real property[1] and holds a tenancy by the entirely with Bryan Coffman in the other three properties.[2] Defendant argues that Government cannot forfeit these assets as substitute assets because Bryan Coffman no longer owns the assets and the "relation back" doctrine does not apply to 21 U.S.C. § 853(p). Defendant also argues that in the properties owed in a tenancy by the entirety with his wife Megan, the Government can only obtain Coffman's contingent interest and may not interfere with Megan's ownership and possession.

---

[1] 4752 Firebook Blvd, 3085 Arrowhead Drive, 3873 Forest Green Drive, 4200 Steamboat Road and 4816 Chaffey Lane
[2] 2556 Ashbrooke Drive, 3200 Mammoth Drive, and 3152 High Ridge Drive.

1

Defendant's argument that the properties should not be forfeited as substitute property is based entirely on Megan Coffman's alleged interest in the properties. Megan Coffman is a third party to these proceedings. "The forfeiture statutes make it clear that an ancillary proceeding is the *sole* avenue for a third party to assert an interest in forfeitable property." *United States v. Erpenbeck*, 682 F.3d 472 (6th Cir. 2012) (citing 21 U.S.C. § 853(k); *Libretti v. United States*, 516 U.S. 29, 44 (1995)). In *Erpenbeck*, the government found $250,000 cash that the defendant gave to a friend who placed the cash into a cooler and buried it "near the green of the third hole (a 366-yard par four)" at a golf course. *Id.* at 474. The district court ordered the property forfeited as substitute property, but the Sixth Circuit held that the government failed to give proper notice to the trustee of the defendant's bankruptcy estate. *Id.* at 478.

Having determined that the notice was invalid, the court then had to address the issue of the proper remedy. The trustee argued that it was entitled to keep the cash and no ancillary proceeding was necessary because "the cash became property of the bankruptcy estate upon the filing of the bankruptcy petition . . . and thus does not meet the statutory definition of 'substitute property' because it is not 'property of the defendant.'" *Id.* at 480. This argument, however, "is nothing more than an assertion that the trustee has a superior interest in the cash—exactly the kind of argument that a third-party must make in an ancillary proceeding under § 853(n)." *Id.* (internal quotations and alterations omitted). The court remanded the case to the district court with instructions to accept a third-party petition from the trustee and hold an ancillary proceeding. *Id.* Even though the court ruled that the trustee was entitled to notice because its interest predated the government's interest, the court was unable to unable to rule that the cash was property of the bankruptcy estate and not property of the defendant because the trustee is a

third party and an "ancillary proceeding is the *sole* avenue for a third party to assert rights in forfeitable property." *Id.*

Megan Coffman's arguments here, like the trustee in *Erpenbeck*, are based solely on a third-party's interest in the property. Those third-party rights can only be addressed at an ancillary hearing. At this point, the Court must order the property forfeited as substitute property. Megan Coffman has already filed third-party petitions to assert claims in previously forfeited property and can file a third-party petition to assert a claim to the property forfeited as substitute property in this Order. The Court will adjudicate all of Mrs. Coffman's claims in one ancillary proceeding.

With regard to the properties held by Bryan and Megan Coffman in tenancy by the entirety, the Government is entitled to forfeit Bryan's interest as a substitute asset. What that means in relation to Megan's interest will be reserved for the ancillary hearing because the Court is unable to adjudicate third-party interests at this stage.

Finally, the argument that the United States cannot forfeit as substitute assets the two automobiles because it violates the Government's own guidelines is without merit. The Court is bound to follow the law, not the Department of Justice's guidelines.

II. **Relation-Back Doctrine**

To assist the parties in discovery and clarify the legal issues for the ancillary hearing, the Court will address the parties' arguments regarding the application of the relation-back doctrine. The Court notes that upon receipt of the *Erpenbeck* decision, the Government withdrew its argument regarding the relation-back doctrine's applicability to substitute assets. [DE 552]. Although relation-back's applicably to substitute is no longer in dispute, it is still unresolved when substitute property becomes subject to forfeiture.

3

"[S]ubstitute property . . . d[oes] not become subject to forfeiture until the tainted assets exceed[] the government's grasp." *Erpenbeck*, 682 at 478 (citing *United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007). In *Jarvis*, the Tenth Circuit held that "the United States does not have a ripened interest in . . . substitute property until (1) after the defendant's conviction and (2) the court determines that the [tainted] property is out of the government's reach for a reason enumerated in [the statute]." *Jarvis,* 499 F.3d at 1204. The Government's interest in substitute property did not vest "until after [Coffman's] conviction" because "[t]he government could not fail to find the tainted property until it tried to collect it." *Id.*

Bryan Coffman was ordered to forfeit $33,000,000 as a money judgment. The Government argues that assets to satisfy the full money judgment "cannot be located upon the exercise of due diligence," "ha[ve] been transferred or sold to, or deposited with, a third party," or "ha[ve] been comingled with other property which cannot be divided without difficulty." It is undisputed that assets to satisfy the full money judgment "cannot be located upon the exercise of due diligence." Therefore, the Government is entitled to seek substitute assets under § 853(p).

Finally, just because the Government's interest in substitute property did not vest until Bryan Coffman's conviction does not mean that it is impossible for the Government to seize the property now held solely by Megan Coffman. Although Megan Coffman acquired title to said properties in December 2007, the Government asserts that those transfers were fraudulent transfers. [DE 546 at 3]. The Court ordered supplemental briefing on this issue and Coffman cites no case that ruled that Courts may not void transfers fraudulent as part of ancillary forfeiture proceedings. [DE 566].

The Government's interest cannot relate back to a time before the transfers to Megan Coffman, but the Government may still be entitled to forfeit the properties as substitute assets if

4

they prove at the ancillary hearing that the transfers were fraudulent transfers under K.R.S. § 378.010. *See, e.g.*, *United States v. Peterson*, 820 F. Supp. 2d 576, 583 (S.D.N.Y 2011) (voiding two transfers as fraudulent conveyances under state law and rendering the property forfeitable). Although the timing of the transfers may be fairly compelling circumstantial evidence, the government's assertion that the transfers occurred after a civil action was filed in Tennessee is, standing alone, insufficient to declare the transfers fraudulent. This issue further supports the Government's need for broad discovery into Megan Coffman's financial history with regard to the forfeited assets and assets she obtained from Bryan Coffman.

Accordingly, it is **ORDERED** that:

(a) This Preliminary Order of Forfeiture will be entered pursuant to Rule 32.2(b) and (e) of the Federal Rules of Criminal Procedure. The government has established that forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p) is warranted, and has provided sufficient notice pursuant to Fed. R. Crim. P. 7(c)(2) and 32.2(a).

(b) The United States Marshals Service, or an agent thereof, shall seize the property subject to forfeiture and dispose of this property in accordance with the law;

**AUTOMOBILES**

1) 1996 Dodge Viper, VIN #1B3ER69E4TV200689;

2) 2006 Mercedes-Benz R500 R Class, VIN #4JGCB75E86A017311.

**REAL PROPERTY**

(1) 2556 Ashbrooke Drive, Lexington, Fayette County, Kentucky;

(2) 4752 Firebrook Blvd, Lexington, Fayette County, Kentucky;

(3) 3085 Arrowhead Drive, Lexington, Fayette County, Kentucky;

(4) 3200 Mammoth Drive, Lexington, Fayette County, Kentucky;

(5) 3873 Forest Green Drive, Lexington, Fayette County, Kentucky;

(6) 3152 High Ridge Drive, Lexington, Fayette County, Kentucky;

(7) 4200 Steamboat Road, Lexington, Fayette County, Kentucky;

(8) 4816 Chaffey Lane, Lexington, Fayette County, Kentucky.

(c) The United States Marshals Service, or an agent thereof, shall provide notice as required by 21 U.S.C. § 853(n).

(d) The United States is authorized to conduct appropriate discovery in accordance with the prior rulings of this Court and to conduct any necessary ancillary proceedings as provided by 21 U.S.C. § 853(n) as to the rights of third parties who may have an interest in the forfeited property.

(e) This Court shall retain jurisdiction in the case for the purpose of enforcing this Order.

(f) The United States may, at any time, move pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure to amend this Preliminary Order of Forfeiture to substitute property to satisfy the money judgment in whole or in part.

(g) The Clerk is directed to deliver copies of this Order to all counsel of record, the United States Marshals Service, and United States Probation.

Dated this 31st day of August, 2012.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge